THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* HASSAN ABDULLAH, Defendant-Appellant.

First District (1st Division)   No. 78-695

Opinion filed September 4, 1979.

James J. Doherty, Public Defender, of Chicago (Brian L. Heise and Timothy P. O'Neill, Assistant Public Defenders, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial in the circuit court of cook county, the defendant, Hassan Abdullah, was convicted of the "improper display of a Chicago flag insignia" in violation of section 173—9 of the Municipal Code of Chicago (Chicago, Illinois, Municipal Code 1977, ch. 173, §173—9) and was fined $25. On appeal the defendant contends that the municipal ordinance under which he was convicted is unconstitutionally vague. We reverse.

The only evidence adduced at the trial was the testimony of Officer James Herman, a Chicago police officer, Lieutenant Walter Duffy, commanding officer of the special police unit, and the defendant.

Officer Herman, the complaining witness in the instant appeal, testified that on June 15, 1977, he arrested the defendant at the Traffic Headquarters Building located at 320 North Clark Street. On direct examination the following colloquy took place:

"Q. And what if anything unusual did you notice about the defendant's clothing on that day?

A. On this date I observed the defendant wearing what appeared to be a special police uniform, and on his right sleeve, he was wearing the official patch of the Chicago Police Department, as I have here."

The city then responded, "Indicating for the record, your Honor, a flag, rectangular in shape, outlined in gold." The record fails to indicate whether the flag in question, or the defendant's special policeman's uniform were ever marked as exhibits or introduced into evidence.

Lieutenant Duffy testified that on the day of his arrest the defendant was a special policeman employed by the St. Mark Day Care Center. He further testified:

"Q. And officer, on that date, or prior to that time—I beg your pardon—Lieutenant, had you given the defendant permission to wear the Chicago flag insignia?

A. No.

Q. And you have seen the insignia that Officer Herman pointed to, and you recognize that?

A. Yes.

Q. What is that?

A. The Chicago flag.

Q. And, sir, who is authorized to wear that flag if you know?

A. Chicago policemen, firemen."

The defendant testified that he had received the uniform in question from the day care center and that this uniform had a flag of the City of Chicago attached to its right sleeve when it came into his possession. The following testimony was given on direct examination:

"Q. And while in the performance of your duty on that day, did you have occasion to wear a uniform?

A. Yes, I did.

Q. And while in the performance of your duty, since you have been a special policeman, have you always worn the same uniform?

A. Yes, I have.

Q. You were wearing that uniform on the date in question?

A. Yes.

Q. How did you obtain that uniform?

*  *  *

A. By my employer.

Q. And who was your employer?

A. St. Mark Day Care Center.

Q. And when your employer gave you that uniform did it have any markings similar to that worn by the Chicago Police Department?

A. Yes.

Q. Did it have a flag of the City of Chicago on either one of the shoulders when you were given that uniform by your employer?

A. Yes.

Q. Which shoulder was that on?

A. The right shoulder."

The defendant was charged with the offense of:

"Improper display of a Chicago Flag Insignia in that he while working as a special policeman, wore a Chicago flag insignia, the insignia of the Chicago Police Department, without the approval

of the superintendent of police in violation of Chapter 173 Section 9 of the Municipal Code of the City of Chicago."

This charge is contained in the record but is undated. The transcript of the trial proceedings refers to a motion for a nonsuit and the submission of a new charge:

"Miss Shropshire [The City]: We have a motion, your Honor. We are moving to non-suit the charge before the Court, because it fails to state a—

The Court: The City makes a motion to non-suit.

Miss Shropshire [The City]: And we request leave of Court to file a new charge, which I have already shown to Mr. Conners.

The Court: Now, the charge now is still a City charge. Is the defendant ready for trial? Inasmuch as the new charge that you have suddenly been advised of, you have a right to ask for a continuance to prepare your case; you have a right to a jury trial.

Mr. Conners [Public Defender]: I have conveyed that information to the defendant, your Honor, and he said he wants to go to trial today on the newly filed charge."

Whether the defendant proceeded to trial on the initial charge or the new charge is unclear from the record. We are left to speculate whether the undated charge in the record is the initial charge or the newly filed charge.

The defendant was found guilty on November 2, 1977, of the "improper display of a Chicago flag insignia" and fined $25. A hearing on a motion for a new trial was held on February 7, 1978, wherein the defendant argued that he was not proven guilty beyond a reasonable doubt and that section 173—9 of the Code was vague and overbroad. The court denied the motion. A notice of appeal was filed by the defendant on February 14, 1978. No issue has been raised as to the pleadings.

As a general policy, Illinois courts will only decide constitutional questions where necessary to a disposition of the case. (*Bender v. City of Chicago* (1974), 58 Ill. 2d 284, 319 N.E.2d 34; *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872; *Pletcher v. Illinois Racing Board* (1978), 57 Ill. App. 3d 73, 372 N.E.2d 1075.) Since we hold that the city has failed to prove that the defendant committed the offense charged, it is unnecessary for us to consider whether the statute is unconstitutional. (See *City of Chicago v. Wilson* (1978), 75 Ill. 2d 525, 389 N.E.2d 522.) It is our opinion that the resolution of the constitutional issue raised by the briefs is unnecessary to a disposition of the case before us. *Osco Drug, Inc. v. Department of Registration and Education* (1977), 54 Ill. App. 3d 936, 370 N.E.2d 59.

Section 173—9 of the Code provides that:

"Every special policeman shall wear a suitable badge, not in the

form of a star, which shall be issued to him by the superintendent of police. Every special policeman shall deposit with the superintendent of police the sum of ten dollars for such badge. Said badge shall be worn by the special policeman on the outside of his outer coat while engaged in the performance of police duty. Upon the return of any badge so issued by the superintendent of police, the ten dollar deposit shall be refunded. It shall be unlawful for any special policeman to wear or display any badge except the one issued by the superintendent of police.

It shall be unlawful for any special policeman to wear any insignia, cap, device, button or uniform unless the same shall first have been approved by the superintendent of police."

Section 173—13 of the Code provides that:

"Any person violating any of the provisions of this chapter shall be fined not less than five dollars nor more than one hundred dollars for each offense."

■■■ Although the defendant in this appeal has failed to raise the issue that there was insufficient evidence to support the judgment against him, Supreme Court Rule 366(a)(5) gives a reviewing court broad power to:

"* * * give any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittur, or the issuance of execution, that the case may require." (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5).)

Furthermore, Supreme Court Rule 366(b)(3)(i) provides that the following procedural rule applies in nonjury cases:

"No special findings of fact, certificate of evidence, propositions of law, motion for a finding, or demurrer to the evidence is necessary to support the judgment or as a basis for review. The sufficiency of the evidence to support the judgment is subject to review without formal action to preserve the question." (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(3)(i).)

"We are not unmindful of the rule that reviewing courts hesitate to reverse a case tried by a judge without a jury, as the presumption is that the trial judge considered only * * * competent evidence. * * * however, when there is a lack of evidence to sustain the judgment, or decree, reviewing courts will not hesitate to reverse the same." (*Majewski v. Majewski* (1946), 328 Ill. App. 194, 202, 65 N.E.2d 584, 587.) Reviewing courts will reverse a trial court's determination of questions of fact only where such determinations are palpably contrary to the evidence. (*Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953,

371 N.E.2d 855; *Lageschulte v. Steinbrecher* (1976), 36 Ill. App. 3d 909, 344 N.E.2d 750; *Groak v. Groak* (1965), 64 Ill. App. 2d 439, 212 N.E.2d 139.) After reviewing the evidence in the instant case, it is our conclusion that it is insufficient to support the trial court's finding that the defendant had violated section 173—9 of the Code.

■■ The defendant was charged with violating a municipal ordinance for which the penalty is a fine between $5 and $100. The City has the burden of proof to establish the violation of a municipal ordinance by a clear preponderance of the evidence. (*City of Chicago v. Joyce* (1967), 38 Ill. 2d 368, 232 N.E.2d 289; *City of Chicago v. Fried* (1978), 64 Ill. App. 3d 981, 382 N.E.2d 48; *City of Chicago v. Roma* (1978), 58 Ill. App. 3d 686, 374 N.E.2d 1097.) The evidence here fails to sustain that burden.

The transcript of the trial totals 13 pages. As previously noted, the only evidence presented in this case was the testimony of Officer Herman, Lieutenant Duffy and the defendant. Although the testimony of Officer Herman suggests that he presented "the official patch of the Chicago Police Department" to the court, the transcript is silent as to any motion by the city with respect to any evidence at the trial. Furthermore, there is no suggestion that the court inspected or examined any physical evidence and examined the same in light of the ordinance.

The city also falls short of the proof required by virtue of the fact that the language of the ordinance in question recites that special policemen must obtain the approval of the superintendent of police before wearing "any insignia, cap, device, button or uniform." There is no showing that the defendant did not get the approval of the superintendent. The record presents the testimony of the commanding officer of the Special Police Unit, Lieutenant Walter Duffy, who stated at the trial that he had not given the defendant permission to wear "the Chicago flag insignia."

There was also no showing at the trial that "a Chicago flag insignia" cannot be worn by special policemen. The ordinance does not mention "a Chicago flag insignia" leaving open the issue as to any restriction of its use. Although Lieutenant Duffy testified that Chicago policemen and firemen are authorized to wear "the Chicago flag" the city failed to show that "a Chicago flag insignia" may not be worn by any special policeman. There was no reference made by the city to any specific portion of the ordinance that prohibits the specific clothing of the defendant. We note further that the transcript of the trial referred to the defendant as having worn "the official patch of the Chicago Police Department," "the Chicago flag insignia," "a flag of the City of Chicago," and "the Chicago flag." It is unclear whether these phrases were intended to be used interchangeably.

■■ The City has failed to prove and establish a violation of the ordinance in question by a clear preponderance of the evidence, and it is our opinion

that there is insufficient evidence in the record to support the trial court's verdict. Therefore, the judgment of the circuit court of Cook County is reversed.

Reversed.

GOLDBERG, P. J., and O'CONNOR, J., concur.